UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CELLCO PARTNERSHIP AND NEW YORK SMSA LIMITED PARTNERSHIP, d/b/a VERIZON WIRELESS,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE COUNTY OF MONMOUTH, NEW JERSEY, *et al.*,<br><br>*Defendants,* | Civ. No. 23-18091 (MAS)(JBD)<br><br>MEMORANDUM ORDER |

Plaintiffs Cellco Partnership and New York SMSA Limited Partnership, both d/b/a Verizon Wireless (hereafter, "Verizon") filed this action under the Telecommunications Act of 1996, No. 104-104, 110 Stat. 56 (1996) ("TCA") against defendants—the County of Monmouth, New Jersey; the Monmouth County Board of Commissioners; and five Monmouth County commissioners acting for and on behalf of Monmouth County (collectively, the "County"). Verizon seeks judicial review of the County's denial of an application to install nine Small Wireless Facilities ("SWFs")—devices designed to enhance the quality and coverage of Verizon's cellular telephone network—in a public right-of-way along Ocean Avenue in the Borough of Belmar, New Jersey. Verizon alleges that the County violated the TCA by (i) failing to support the denial of the SWF application with substantial evidence; (ii) materially inhibiting Verizon's provision of personal wireless services; (iii) failing to act on necessary environmental permitting applications; (iv) operating a *de facto*

moratorium; and (v) breaching a putative right-of-way agreement. *See* [Dkt. 1] ("Complaint"), Introduction. The case is at its earliest stages: The Court is scheduled to hold an initial Rule 16 scheduling conference on April 8, 2024.

Before the Court is a motion to intervene filed by several residents of Belmar, acting under the moniker Belmar Against 5G Towers (collectively, "Intervenors"). [Dkt. 14.] According to their motion papers, the individual Intervenors each live within several hundred feet of the location of one or more of the proposed SWFs. Concerned with the potential detrimental impact that the SWFs might have on the aesthetic quality of their neighborhood, the local environment and wildlife, and their property values, Intervenors seek to intervene as defendants to protect their individual and collective interests. They move to intervene as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b). Verizon opposes the motion; the County takes no position it.

The Court has reviewed the motion papers [Dkts. 14, 26, 39] and heard oral argument from counsel. For the reasons that follow, the Court will grant the motion to intervene in part and deny it in part.

I.  BACKGROUND

A.  The Telecommunications Act

As relevant here, the TCA "generally preserves the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless communications facilities like cell phone towers, but imposes specific limitations on that authority." *T-Mobile S., LLC v. City of Roswell*,

574 U.S. 293, 300 (2015). "One of those limitations is that any decision to deny a request to build a tower shall be in writing and supported by substantial evidence contained in a written record[,] and "[a]nother is that parties adversely affected by a locality's decision may seek judicial review." *Id.* (quoting 47 U.S.C. § 332(c)(7)(B)).

Another important limitation is that state and local governments must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with [the relevant] government or instrumentality, taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). Relevant here, the Federal Communications Commission has promulgated applicable regulations—the so-called "shot-clock rule"—interpreting what it means for a local government to act on a siting application "within a reasonable period of time." The shot-clock rule generally provides that a local government has 60 days to review and act on an application to co-locate SWFs on a pre-existing structure, and 90 days to review and act on an application to install SWFs on a new structure. 47 C.F.R. § 1.6003(b)-(c).

B.  This Dispute

In 2016, Verizon and Belmar officials began discussing the installation of additional SWFs along the Ocean Avenue public right-of-way; according to Verizon, its cellular wireless network had exceeded capacity, leading to service blockages during the busy summer months. Compl. ¶¶ 48-51. These discussions culminated in a Right-of-Way agreement ("ROW agreement") between Verizon and the County, which established a process for the County's review of Verizon's future applications

3

to install SWFs within the Ocean Avenue public right-of-way. *Id.* ¶ 54-55. In 2021, Verizon submitted an application to Belmar under the ROW Agreement to install eighteen such SWFs. *Id.* ¶ 56. When Belmar did not respond by the applicable shot-clock deadline, Verizon filed suit against Belmar. *Id.* ¶ 57. That litigation resulted in a settlement agreement between Verizon and Belmar, under which twenty SWFs would be approved to be installed within the Ocean Avenue public right-of-way. *Id.* ¶¶ 57-59. According to Verizon, the settlement agreement was not limited to the SWF applications that were specifically listed in an appendix to the settlement agreement; rather, Verizon asserts that the agreement applied to future SWF applications in other locations. *Id.* ¶¶ 60-62.[1]

In May 2023, Verizon submitted an application to the County pursuant to the ROW agreement (and ostensibly the settlement agreement), seeking approval for the installation of nine of the twenty SWFs along the Ocean Avenue public right-of-way. Compl. ¶ 60. As part of the application, Verizon also requested that the County,

---

[1]   As an aside, the Court notes its confusion with the complaint's recitation of Verizon's alleged interactions and litigation with *Belmar* officials, without specifying how those interactions and resulting events impacted the *County*. The complaint alleges that the discussions beginning in 2016 leading to the ROW agreement occurred between Verizon and Belmar officials yet alleges without explaining that the ROW agreement ultimately executed was between Verizon and the County. The complaint also alleges that Verizon submitted its 2021 SWF application only to Belmar, and that Belmar's failure to act led to the 2021 litigation against Belmar, which apparently did not include the County. *See generally* Compl. ¶¶ 48-59. As relevant here, the complaint does not specify whether or to what extent the County was involved with the 2016 discussions leading to the ROW agreement; with Verizon's 2021 SWF application; with the resulting 2021 litigation; or with the settlement agreement that resolved that case. In any event, the Court recites the allegations as Verizon pleads them in the complaint, and the Court's confusion on this point does not affect its analysis or decision here.

in its capacity as owner of the Ocean Avenue public right-of-way, execute a landowner consent form to be included with Verizon's separate application to the New Jersey Department of Environmental Protection ("NJDEP") under a state environmental statute—the Coastal Area Facilities Review Act, N.J.S.A. 13:19-1, *et seq.* ("CAFRA")—for approval of the SWFs.  In addition to the County's approval, Verizon also will need to secure NJDEP's approval under CAFRA before the SWFs can be installed.  *Id.* ¶¶ 65-67.  And according to Verizon, it needed the County to execute the landowner consent form before it could make the full CAFRA application to NJDEP.  *Id.* ¶ 67.

Meanwhile, Verizon's SWFs had become a hot-button issue in some quarters of Belmar, with several residents (including some Intervenors) expressing dissatisfaction and concern with the potential environmental, economic, and aesthetic impact that additional SWFs might have in the community.  *See* Compl. ¶ 72 & n.28.  These concerns escalated to affirmative grassroots opposition efforts that included at least one public meeting of concerned Belmar residents, which at least one individual County defendant attended.  *Id.* ¶¶ 73-74.  According to Verizon, one or more individual defendants here—acting in their official capacity as Monmouth County commissioners—expressed support for the mounting public opposition to Verizon's proposed SWFs along Ocean Avenue.  *See id.* ¶¶ 74-75 & n.29.

On August 8, 2023—the day that Verizon contends that the applicable 90-day shot clock expired—the County denied Verizon's SWF application.  *See id.* ¶¶ 76-77.

The County's stated reasons for denying the application included the following: the settlement agreement between Verizon and Belmar did not bind the County; the ROW agreement did not apply to SWF applications requiring the construction of new telephone poles; Verizon did not follow the appropriate permitting processes under County regulations; and several technical deficiencies that the County engineer had identified.  *Id.* ¶¶ 77-79.[2]

On September 7, 2023, due to the County's alleged action and inaction—including its denial of the SWF application and its failure to execute the CAFRA landowner consent form—Verizon filed this suit against the County seeking judicial review under the TCA.  [Dkt. 1.]

On September 28, 2023—three weeks after Verizon commenced this suit—Intervenors moved to intervene as defendants.  One or more of the individual Intervenors was involved with the public opposition efforts to Verizon's SWF application, and each is concerned with the potential negative impact that the SWFs

---

[2]   The parties (and the Intervenors) appear to dispute the nature of the May 2023 application and the County's August 2023 denial.  According to the County, it was unclear whether Verizon's SWF application was a "siting application" under the TCA triggering the shot-clock rule, or whether it was a simple request under the ROW agreement or a permit application under county regulations that did not trigger the shot clock.  *See,e.g.*, [Dkt. 25], ¶¶ 180-208.  The County says that it denied the application under the TCA within the shot-clock deadline out of an abundance of caution but left open the possibility for Verizon to bring its application into compliance under the County's regulations and the ROW agreement.  *Id.*  The Court recites here the allegations as framed in Verizon's complaint, but in doing so does not opine in any way on any substantive issues in dispute, and specifically does not make findings regarding the nature of Verizon's May 2023 application, the County's August 2023 denial, or any obligations created under the ROW agreement, the settlement agreement, the TCA, CAFRA, or the County's permitting regulations.

6

might have on Belmar's environment, wildlife, aesthetic beauty, and property values. [Dkt. 14.] As also noted, the individual Intervenors and others have joined together as Belmar Against 5G Towers. *See* [Dkt. 14-1] ("Mot. Br.") at 2-7.[3] Separately, on October 17, 2023, Intervenors filed a motion to dismiss Verizon's complaint for lack of subject matter jurisdiction and failure to state a claim. [Dkt. 20]. Because Intervenors were not parties to the action, however, the Court administratively terminated the motion to dismiss pending a decision on the motion to intervene. [Dkt. 36.] On October 18, 2023, the County filed an answer. [Dkt. 25.]

The Court held an on-the-record telephone status conference on December 11, 2023, during which it heard argument from Intervenors and Verizon on the motion to intervene. The motion to intervene is now fully briefed and ripe for decision.

II. LEGAL STANDARDS

Intervenors move to intervene as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b).

Rule 24(a)(2) provides that "[o]n timely motion, the [C]ourt must permit anyone to intervene who. . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Third Circuit interprets Rule 24(a) to allow an applicant to intervene as of right

---

[3] According to their motion papers, one or more of the individual intervenors also belong to another entity, known as Children's Health Defense ("CHD"), which joins the motion to intervene. *See* Mot. Br. at 6; *infra* at 9 & n.4.

upon satisfying four criteria: (i) the application for intervention is timely; (ii) the applicant has a sufficient interest in the litigation; (iii) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (iv) the interest is not adequately represented by an existing party in the litigation. *See Mtn. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *Harris v. Pernsley,* 820 F.2d 592, 596 (3d Cir. 1987). The applicant bears the burden of establishing the existence of all four factors, and "failure to satisfy any one of the four factors justifies denial of the request." *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, Civ. No. 16-1369 (MAS), 2016 WL 7332732, at *1 (D.N.J. Dec. 16, 2016) (citations omitted).

Rule 24(b), in turn, provides that "[o]n timely motion, the [C]ourt may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Whether to grant permissive intervention under Rule 24(b) is a "highly discretionary decision." *King v. Governor of the State of N.J.*, 767 F.3d 216, 246 (3d Cir. 2014) (quoting *Brody*, 957 F.2d at 1115). In exercising that discretion, courts "consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already represented in the litigation." *Bacon v. Avis Budget Grp., Inc.*, Civ. No. 16-5939 (KMJ), 2022 WL 2158964, at *2 (D.N.J. June 15, 2022) (citations omitted). Under the rule,

8

"[t]he court [also] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

III. DISCUSSION

The Court will exercise its discretion and permit Intervenors—the individuals and Belmar Against 5G Towers—to intervene under Rule 24(b).[4] The Court therefore need not, and does not, address the motion to intervene as of right under Rule 24(a)(2). The Court grants permissive intervention for the following reasons.

*First*, as an initial threshold matter, Verizon does not (and cannot) dispute that Intervenors' motion was timely; as noted, they filed the motion a mere three weeks after Verizon filed the complaint and before the County filed its answer.

*Second*, as another threshold matter, the interests, defenses, and arguments that Intervenors seek to assert in this case share "common question[s] of law [and] fact" with those at issue between Verizon and the County. Fed. R. Civ. P. 24(b). Indeed, both Intervenors and the County have asserted various—and not entirely

---

[4] The Court lacks sufficient information regarding proposed intervenor CHD to make a reasoned decision about that entity's interest in this litigation and its capacity to aid a resolution on the merits. The motion papers contain one threadbare paragraph regarding CHD, with no specific information besides its generalized interest "to end health epidemics by working aggressively to eliminate harmful toxins in the human environment," and that it "has 1,726 members in New Jersey[] and 195 members in Monmouth County." Mot. Br. at 6-7. The motion does not otherwise identify a legal or factual basis for CHD's intervention separate and apart from the other Intervenors. While CHD is represented by the same counsel as the other Intervenors and some of the individual Intervenors are said to be members of CHD, *see id.*, the Court is not persuaded, based on the information that it has before it, that CHD independently should be permitted to intervene. And nothing in the motion provides any basis for the Court to conclude that CHD independently must be allowed to intervene as of right. Accordingly, the Court will deny the motion to intervene, without prejudice, as it regards CHD.

overlapping—arguments as to why the County's denial of Verizon's SWF application was justified (or at least not unlawful) and why Verizon is not entitled to relief under the TCA. Verizon's suit seeks a judgment that the County must approve Verizon's SWF application and execute a landowner consent form in connection with Verizon's forthcoming CAFRA application to NJDEP. Although Intervenors are not themselves the decisionmakers on those issues, they have proffered defenses and arguments (as has the County) specifically challenging Verizon's ability to obtain that relief. Intervenors therefore have satisfied the threshold Rule 24(b) commonality requirement.

*Third*, expressing no view on the merits of Intervenor's legal challenges, the Court believes, for the reasons explained below, that their participation will aid a more robust disposition of the case. For one thing, Intervenors seek to assert Rule 12 challenges to the complaint's legal sufficiency that the County has elected not to assert through a motion to dismiss. The County filed an answer to Verizon's complaint, but Intervenors believe that the complaint should be dismissed under Rule 12 as inadequately pleaded.

For another thing, although their bottom-line goal is the same, Intervenors' path to defending this case is different than the County's. Given their concern about the environmental impact of the proposed SWFs, Intervenors explain that they are concerned about this case's potential to undermine NJDEP's ability to vet the SWF application as part of the forthcoming CAFRA process. Specifically, Intervenors take issue with Verizon's stated position that its request that the County execute a

10

CAFRA landowner consent form is itself a siting application that triggered the TCA's shot-clock rule.  Extrapolating from there, Intervenors express concern with Verizon's anticipated position that its CAFRA application likewise will be a siting application that subjects NJDEP to the 90-day shot clock.  This, Intervenors say, will inhibit NJDEP's ability to review thoroughly the environmental impact of the proposed SWFs and may cause NJDEP—pressed by such a time crunch—to rubber stamp Verizon's CAFRA application.  Accordingly, Intervenors express concern that Verizon's legal position will undermine NJDEP's ability to regulate and protect the local environment.  *See* [Dkt. 39] at 7, 12-13.

In response, Verizon asserts that Intervenors' arguments on these issues take them well outside the scope of the issues to be decided in this case.  Maybe so, but maybe not.  Whether Intervenors' NJDEP-related concerns are properly addressed by this Court in this case is a question for another day.  For present purposes, the salient points are that (i) Intervenors identify a potential legal issue regarding the scope of the TCA that might affect their interest in the environmental impact of the proposed SWFs, and (ii) the County is not charged with environmental regulation and therefore, unsurprisingly, has not raised those concerns.  So at least one of Intervenors' expressed arguments is entirely unique.[5]

Ultimately, for purposes of permissive intervention, Intervenors are pressing a somewhat different legal strategy—with somewhat different arguments—than the

---

[5]   The Court emphasizes that its decision here in no way constitutes a ruling, one way or the other, on whether the interplay between the TCA and CAFRA is a relevant issue in this case.  *See infra* at 15.

County. This persuades the Court that permitting intervention will more robustly aid the Court's resolution of the parties' claims and defenses. Accordingly, and at this early juncture, the Court disagrees with Verizon that Intervenors will not add anything of meaningful value to the litigation.

*Fourth,* the Court concludes that permitting intervention here will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). Verizon does not explain how intervention will prejudice or delay its ability to pursue the relief that it seeks—beyond baldly stating that it will. *See* [Dkt. 26] at 11-13. This case is at its earliest stages, having been filed in September 2023. Intervenors moved to intervene just three weeks later, and the Court has resolved the motion just three months after the completion of briefing and oral argument. Moreover, the Court has set an initial Rule 16 scheduling conference for April 8, 2024, and thus discovery has not yet begun. The Court expects that Intervenors can and will participate in the case with little prejudicial impact on the orderly resolution of the parties' claims and defenses.[6]

The Court acknowledges that Intervenors intend to re-file a motion to dismiss Verizon's complaint. For the reasons explained above, however, the Court believes that having a full airing of, and a decision on, the legal challenges to Verizon's complaint is superior to any delay that the motion will cause (if any). Moreover, any marginal prejudice to Verizon can be mitigated or eliminated by proceeding with

---

[6]   The Court cautions that it will not abide any improper or unreasonable efforts by Intervenors to obstruct or delay discovery or impede an orderly resolution of the case on the merits. *Cf.* Fed. R. Civ. P. 1.

discovery while the motion is pending. Accordingly, discovery will not be stayed while the Court considers Intervenors' motion to dismiss.

*Fifth*, the Court acknowledges Verizon's reliance on the First Circuit's decision in *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33 (1st Cir. 2020). But the First Circuit—as it considered permissive intervention—merely affirmed the trial court's highly discretionary decision not to permit intervention, noting that "there is no principled way for us to say that the district court abused its discretion in denying the appellants' motions for permissive intervention." *Id.* at 42. The court explained that "a district court mulling permissive intervention is free to consider whether the applicants may be helpful in fully developing the case." *Id.* at 41. As explained above, on this record and in these circumstances, this Court believes that Intervenors' participation here will be helpful in fully developing the case and arriving at a just and correct resolution on the merits. So just because the First Circuit affirmed the trial court's discretionary decision there does not mean that this Court must exercise its discretion to deny the motion here. In this regard and for the reasons expressed above, this Court does not agree with Verizon that *Barnstable* is on all fours with this case.

*Finally*, based on the information and arguments set forth in their motion to intervene and their proposed motion to dismiss submitted with their reply brief, *see* [Dkt. 39-1, Ex. A], the Court agrees with Intervenors that there is sufficient clarity to permit intervention even in the absence of a proposed answer. Although the failure to submit a proposed "pleading" with a motion to intervene may be a

13

sufficient basis for denying the motion, "[o]ur courts . . . have not required strict compliance with Rule 24(c)" and have granted motions to intervene . . . despite a movant's failure to adhere precisely to the requirements of Rule 24(c), where the purpose of intervening was sufficiently clear." *Conforti v. Hanlon*, Civ. No. 20-8267 (ZNQ), 2023 WL 2744020, at *3 (D.N.J. Mar. 31, 2023) (citing *United States ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 410-412 (W.D. Pa. 2006)).  Because Intervenors seek to move to dismiss Verizon's complaint (and have appended their proposed Rule 12(b)(6) motion), it makes little sense also to require them to submit a proposed answer.  The Court concludes that the proposed motion to dismiss suffices here as a "pleading" within the spirit of Rule 24(c).  *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009) (concluding that proposed intervenor's statement of interest satisfied Rule 24(c) where it provided sufficient notice to the court and the parties of the intervenor's interests); *Associated Builders & Contrs. of W. Pa. v. Cty. of Westmoreland*, Civ. No. 19-1213 (LPL), 2020 WL 571691, at *3 (W.D. Pa. Jan 21, 2020) (concluding that although movants failed to attach a pleading to the motion, their moving brief sufficiently placed plaintiffs on notice of the reasons for intervention in accordance with Rule 24(c), and also acknowledging that "[o]ther circuits have held pleadings in other forms to be sufficient to satisfy the requirement of Rule 24(c), as the primary goal is to provide notice to the other parties"). The Court will not deny intervention on that basis.

***

The Court's decision here is narrow and procedural. The Court expresses no view on the merits of Intervenors'—or, for that matter, Verizon's or the County's—arguments, claims, and defenses. Indeed, nothing in this memorandum order should be misunderstood as answering any of the questions that Intervenors seek to raise, or even deciding whether those questions are properly answered in this case in the first place. In that regard, for instance, Verizon might be correct that Intervenors' arguments about the future impact of a decision in its favor on NJDEP's ability to regulate the local environment are questions that the Court cannot or should not answer in this case. On the other hand, Intervenors might be correct that answers to those questions necessarily will be intertwined with a judgment in Verizon's favor and must be answered here. The Court does not answer those and other questions today; the Court concludes only that Intervenors should be permitted to intervene so that they can ask them.

IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS the motion to intervene [Dkt. 14] as to Lawrence Reynolds, Rose Daganya, Michael Ushak, Dan Rubinetti, Paul M. Elia, Michael McHale, Mary McHale, and Belmar Against 5G Towers. Those Intervenors may intervene and participate in this case as party defendants. The Court DENIES the motion without prejudice as to Children's Health Defense. The Clerk of the Court is directed to amend the caption accordingly.

On or before March 12, 2024, Intervenors shall re-file their motion to dismiss the complaint. Plaintiffs shall file an opposition to the motion on or before March 29, 2024, and Intervenors may file a reply on or before April 5, 2024. Upon entry of a scheduling order following the Rule 16 conference presently scheduled for April 8, 2024, discovery shall proceed apace and shall not be stayed while the motion to dismiss is pending.

**IT IS SO ORDERED** this 7th day of March, 2024

---

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE