[ECF No. 69]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CELLCO PARTNERSHIP, et al., **Plaintiffs,** v. THE COUNTY OF MONMOUTH, NEW JERSEY, et al., **Defendants.** | Case No. 23-18091 (ESK/EAP) |

## OPINION

This matter comes before the Court by way of Proposed Intervenor Children's Health Defense's ("CHD") Motion to Intervene. ECF No. 69. Plaintiffs Cellco Partnership and New York SMSA Limited Partnership, both d/b/a Verizon Wireless ("Verizon"), oppose the motion. ECF No. 72. CHD filed a reply brief in support of its motion. ECF No. 73. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, CHD's motion is **DENIED**.

## BACKGROUND

### A.   Procedural History

On September 7, 2023, Verizon filed this action under the Telecommunications Act of 1996, 47 U.S.C. § 332 ("TCA") against Defendants the County of Monmouth, New Jersey; the Monmouth County Board of Commissioners; and five Monmouth County officials acting for and on behalf of Monmouth County (collectively, the "County"), challenging the County's denial of

its application to install nine Small Wireless Facilities ("SWFs")[1] in a public right-of-way in Belmar, New Jersey, a municipality in Monmouth County.  ECF No. 1 ("Compl.") ¶¶ 48-62.  In its current Amended and Supplemental Complaint, filed on May 22, 2024, Verizon alleges that the County violated the TCA by (a) failing to support the denial of Verizon's SWF application with substantial evidence; (b) materially inhibiting Verizon's provision of personal wireless service; (c) illegally regulating the placement, construction, and modification of personal wireless facilities on the basis of the environmental effects of radiofrequency ("RF") emissions; (d) adopting a new small wireless facility ordinance that is preempted by federal law; and (e) breach of contract with respect to Verizon's proposed deployment of telecommunications facilities in the County's public rights-of way.  ECF No. 76 ("Am. Compl.") at 1.

On September 27, 2023, three weeks after Verizon initiated suit, Belmar Against 5G Towers, Lawrence Reynolds, Rose Daganya, Michael Ushak, Dan Rubinetti, Paul M. Elia, Michael and Mary McHale (collectively "Resident Intervenors"), and CHD filed a motion to intervene.  ECF No. 12.  That motion described the Resident Intervenors as "individuals who live and own property in the immediate vicinity of the [proposed SWFs] and will be directly and adversely affected if [they are] constructed and go[] into operation."  ECF No. 12-1 (Proposed Intervenors' Br.) at 2.  These individuals and other affected residents then "joined together under the name of 'Belmar Against 5G Towers,'" and also sought to intervene.  Id. at 6.  The motion described CHD as a 501(c)(3) non-profit organization whose "mission is to end health epidemics by working aggressively to eliminate harmful toxins in the human environment, hold those responsible accountable, and establish safeguards to prevent future harm through litigation,

---

[1] The Complaint defines SWFs as devices that "assist in providing wireless telecommunications and broadband services to its customers."  ECF No. 1 (Compl.) ¶ 40.

education, advocacy, and scientific research." *Id.* at 6-7. CHD has 195 members in Monmouth County, which included the then-proposed named intervenors. *Id.*

Verizon opposed this first motion to intervene. ECF No. 26 (Verizon's Opp'n). The Intervenors and CHD filed a reply brief, attaching a proposed responsive pleading in the form of a motion to dismiss Verizon's Complaint.[2] ECF No. 39-1 (Proposed Intervenors' Reply), Ex. A.

On March 7, 2024, the Court granted the first motion to intervene in part and denied it in part without prejudice. ECF No. 52 (Mem. Order). With respect to the Resident Intervenors, the Court found that they met the standard for permissive intervention under Federal Rule of Civil Procedure 24(b). *Id.* at 9, 15. With respect to CHD, however, the Court denied the motion without prejudice, reasoning:

> The Court lacks sufficient information regarding proposed intervenor CHD to make a reasoned decision about that entity's interest in this litigation and its capacity to aid a resolution on the merits. The motion papers contain one threadbare paragraph regarding CHD, with no specific information besides its generalized interest "to end health epidemics by working aggressively to eliminate harmful toxins in the human environment," and that it "has 1,726 members in New Jersey[] and 195 members in Monmouth County." [Proposed Ints.'] Br. at 6-7. The motion does not otherwise identify a legal or factual basis for CHD's intervention separate and apart from the other Intervenors. While CHD is represented by the same counsel as the other [Resident] Intervenors and some of the individual Intervenors are said to be members of CHD, *see id.*, the Court is not persuaded, based on the information that it has before it, that CHD independently should be permitted to intervene.

*Id.* at 9 n.4.

The Court ordered the Resident Intervenors to file their proposed motion to dismiss, *id.* at 16, which they did on March 12, 2024, ECF No. 54. In their memorandum in support of their

---

[2] The Court notes that Federal Rule of Civil Procedure 24(c) requires the proposed pleading to be attached to the motion itself, not the reply brief. *See infra* n.7.

3

motion to dismiss, the Resident Intervenors represented that "CHD reserves the right to later seek intervention and will likely rely substantially on the arguments set forth herein for any potential intervention application." ECF No. 54-1 (Resident Intervenors' Mem.) at 1 n.1.

The Court held an initial scheduling conference with Verizon, the County, and the Resident Intervenors on April 8, 2024, and set a case management schedule. ECF No. 65 (Scheduling Order).

On April 18, 2024, CHD filed a renewed motion to intervene. ECF No. 69. On May 6, 2024, Verizon filed its opposition. ECF No. 72 ("Pls.' Opp'n"). On May 13, 2024, CHD filed its reply brief. ECF No. 73 ("CHD's Reply").

On May 21, 2024, the Court entered a stipulation and consent order by the parties, permitting Verizon to file an amended and supplemental complaint. ECF No. 75. Verizon filed its Amended and Supplemental Complaint the next day. ECF No. 76. The County and the Resident Intervenors each answered the Amended and Supplemental Complaint on June 12, 2024. ECF Nos. 77, 78. In the Resident Intervenors' Answer, they noted: "[CHD] submitted a renewed Motion to Intervene on April 18, 2024[.] . . . If the motion is granted CHD will adopt these Answers and Counterclaims." ECF No. 77 at 2.

**B.    Facts Set Forth in CHD's Renewed Motion to Intervene**[3]

CHD contends that it is a 501(c)(3) nonprofit advocacy organization located in Franklin Lakes, New Jersey and incorporated under the laws of California. ECF No. 69-2, Decl. of Mary S. Holland, Esq. ("Holland Decl.") ¶ 2. CHD has members throughout the United States and

---

[3] In considering a motion to intervene, the court must accept as true the non-conclusory allegations made in support of the motion. *Madison Joint Venture LLC v. Chemo Rsch. S.L.*, No. 19-8012, 2021 WL 9667959, at *3 (D.N.J. Mar. 23, 2021) (quoting *Palladino v. Corbett*, No. 13-5641, 2014 WL 830046, at *1 n.1 (E.D. Pa. Mar. 4, 2014)).

globally, including 4,942 members in New Jersey, of which 607 members reside in Monmouth County that will be directly impacted by the current action, and 2,163 members residing in other New Jersey counties on the Atlantic Ocean. *Id.* ¶¶ 2-3.

CHD is dedicated to ending children's chronic health conditions by eliminating harmful toxic exposures to humans and the rest of the environment. *Id.* ¶ 4. CHD notes that there is a growing body of evidence that radiation from wireless technology threatens the health of children and adults alike, as well as animals, birds, insects, trees, and plants. *Id.* ¶ 5.

CHD acknowledges that several individual residents of Belmar, New Jersey were permitted to intervene, but contends that it has "unique and additional claims separate and apart from the Belmar residents." *Id.* ¶ 7. Specifically, it asserts that its "interest in protecting children from environmental toxins extends to preserving the full authority of the New Jersey Department of Environmental Protection to conduct its own environment review of wireless permitting applications under the Coastal Areas Facilities Review Act ('CAFRA')." *Id.* ¶ 8. CHD goes on to suggest that the Court's decision on the issues in this case "will result in a precedent-setting decision that will impact CHD's advocacy and litigation efforts to protect its members in Monmouth County, New Jersey and beyond." *Id.* ¶ 7.

## ANALYSIS

Federal Rule of Civil Procedure 24(b) provides, in pertinent part:

> **(b) Permissive Intervention**
>
> **(1) In General.** On timely motion, the court may permit anyone to intervene who:
>
> . . . .
>
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.

CHD currently seeks to intervene in this case on a permissive basis under Federal Rule of Civil Procedure 24(b)(1)(B).  Verizon opposes the motion, responding that: (1) CHD lacks Article III standing; and (2) CHD does not meet the standards for permissive intervention.  The Court addresses each argument in turn.

**A.    Standing**

Verizon first argues that CHD does not have Article III standing to intervene in this lawsuit.  Article III limits federal jurisdiction to cases and controversies.  U.S. Const. art. III, § 2; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  To have standing, a plaintiff must allege "a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis in original) (quotations omitted).  To satisfy this burden, a plaintiff must show that: (1) "he is under a threat of suffering 'injury in fact' that is concrete and particularized;[4] the threat must be actual and imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "a likelihood that a favorable judicial decision will prevent or redress the injury."  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012) (citing *Summers*, 555 U.S. at 493).

An association has standing to sue on behalf of its members when "(1) at least one of its members would have standing to sue in his or her own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of [its] individual members."  *PJM Power Providers Grp. v. FERC*, 88

---

[4]   For an injury to be "particularized," "'it must affect the plaintiff in a personal and individual way.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  While particularization is necessary to establish injury in fact, "it is not sufficient."  *Id.*  An injury in fact must also be "concrete," which requires that the injury actually exists and not be abstract.  *Id.*

F.4th 250, 265 (3d Cir. 2023) (cleaned up), *cert. denied sub nom. Pub. Utils. Comm'n of Ohio v. FERC*, No. 23-1069, 2024 WL 4426548 (U.S. Oct. 7, 2024); *Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, 518 F. App'x 58, 63 (3d Cir. 2013). "In order to establish associational standing, however, an organization must 'make specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm.'" *N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (alteration in original) (quoting *Summers*, 555 U.S. at 498).

Verizon does not dispute that CHD could meet the first and third requirements of associational standing, but it contends that CHD fails to meet the second requirement because the interests CHD seeks to protect are not germane to the organization's purpose. Pl.'s Opp'n at 8-12. The germaneness inquiry is not stringent, and a court's consideration of an association's stated purpose is sufficient. *See Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 88 (3d Cir. 1991); *see also Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 58-59 (D.C. Cir. 1988) (holding that the germaneness prong mandates "mere pertinence between litigation subject and organizational purpose" and noting that several courts have declared this prong "undemanding") (citing cases).

CHD's stated Vision and Mission provide:

> VISION:
> A world free of childhood chronic health conditions caused by environmental exposures[.]
>
> MISSION:
> Our mission is ending childhood health epidemics by eliminating toxic exposure. We will restore and protect the health of children by eliminating environmental exposures, holding responsible parties accountable, and establishing safeguards to prevent future harm of children's health.

7

https://childrenshealthdefense.org/about-us/childrens-health-defense-mission/ (last visited Oct. 23, 2024), available at https://perma.cc/889N-UWQC.

CHD's website specifically addresses electromagnetic radiation and wireless, as follows:

> Through litigation, education and advocacy, we aim to protect our health, environment and privacy from the uncontrolled rollout of harmful wireless technology—including cell towers, small cells, smart meters and other Internet of Things (IoT) devices.
>
> Explore our pages to learn all about how and why we are pushing aback against the wireless takeover—and how you can too!

https://childrenshealthdefense.org/electromagnetic-radiation-wireless/ (last visited Oct. 23, 2024), available at https://perma.cc/CBB2-JJBG.

With respect to the environment in particular, CHD's website emphasizes that:

> Many different life forms, from plants and animals to insects and bacteria, have been shown to be adversely affected by EMFs. The environment, more appropriately described as the Earth system, is a highly complex, intricately connected and dynamic entity. From the depths of the soil to the highest layers of the atmosphere, minor imbalances can result in far-reaching consequences on the entire system.

https://childrenshealthdefense.org/emr/emf-emr-5g-environment/ (last visited Oct. 23, 2024), available at https://perma.cc/Y3QA-CX5C.

CHD alleges that resolution of several issues of law and fact in this lawsuit will impact its interests in preserving wholesome habitats. ECF No. 69-1 ("CHD's Mem.") at 10. In that regard, CHD alleges that "[t]here are several issues of law and fact whose resolution will impact" that interest. *Id.* The first issue pertains to Verizon's challenge to the County Engineer's asserted deficiencies in Verizon's application, each of which is related to a "safe harbor" recognized by the FCC and which implicates "a local jurisdiction's ability to protect [the] 'health, safety, and welfare' of its citizens" without being subject to liability. *Id.* at 10-11. CHD wants to ensure that

8

the Court fully understands the FCC safe harbors and their effect on the County's rejection of Verizon's application. *Id.* at 11. Second, CHD notes that Verizon claims that its May 10, 2023 letter with the attached Land Owner Certification form "constitutes a 'siting application' under the FCC's rules." *Id.* at 11-12. Although CHD agrees with the County that Verizon's May 10 letter does not constitute a siting application, it asserts that the County Defendants will "not fully address[] the consequences of a finding that the Land Owner Certification is a 'siting application,'" the import of which would make the New Jersey Department of Environmental Protection ("NJDEP") a siting authority under 47 C.F.R. part 1, subpart U. *Id.* CHD seeks to intervene to ensure this issue is fully addressed. Third, CHD seeks to ensure that if the Court finds that NJDEP is a "siting authority" subject to 47 U.S.C. § 332(c)(7)'s mandates and prohibitions,[5] CHD will seek to "preserv[e] the NJDEP's current ability "to conduct its own environmental review of wireless permitting applications under the [CAFRA]" and will "vigorously participate in any CAFRA proceeding." Holland Decl. ¶ 8; CHD's Mem. at 12.

In an effort to undermine CHD's germaneness showing, Verizon argues that CHD has asserted nothing more than conclusory allegations of a generalized interest in the protection of the environment, which is insufficient to confer standing. Pl.'s Opp'n at 10 (citing *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, 846 F.3d 625, 640 n.22 (3d Cir. 2017) (noting that the "particularization requirement" of standing requires more than "generalized grievances"); *see*

---

[5] Verizon argues that on April 22, 2024, counsel for Verizon received a jurisdictional determination from NJDEP advising that a permit under the Coastal Areas Facilities Review Act ("CAFRA") is no longer required for Verizon's Small Wireless Facilities Application. ECF. No. 72-1, Declaration of Robert D. Gaudioso ("Gaudioso Decl.") ¶ 6 & Ex. A (NJDEP determination) Verizon contends that this determination moots the issue of whether and to what extent the NJDEP is subject to 47 U.S.C. § 332(c)(7)'s mandates and prohibitions. Even assuming this to be true, CHD still has an interest in preserving the NJDEP's ability to address the environmental effects of radiofrequency emissions.

*Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1 ) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way." (cleaned up)); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 92-93 (D.D.C. 2007) (holding that the National Resources Defense Council's general interest in the protection of all waterbodies and that its members "can be injured by ecological damages" that may result if plaintiff succeeded in the action was not sufficiently concrete for the purposes of standing).

The Supreme Court, however, has recognized aesthetic, environmental, and economic injuries as injuries in fact, so long as the challenged agency action can be shown to cause the injuries alleged and the plaintiff asserts a "specific and perceptible" harm that distinguishes the organizational plaintiff's interests and its members from the generalized interests of the public as a whole.  *United States v. SCRAP*, 412 U.S. 669, 689 & n.14 (1973).  Indeed, in *Interfaith Community Organization v. Honeywell International, Inc.*, 399 F.3d 248 (3d Cir. 2005), the Third Circuit Court of Appeals found that a community organization established associational standing in a citizen suit under the Resource Conservation and Recovery Act.  *Id*. at 252, 257-58.  There, the association's individual members had concerns over health risks caused by waste from the former site of a chromium manufacturing plant, and the interests at stake were germane to the organization's purpose, which included improvement of quality of life in an area where all of the individual plaintiffs lived and the site was located.  *Id.* at 256-58.

Similarly here, one of CHD's expressed organizational purposes is to restore and protect the health of children by eliminating environment exposures, holding responsible parties accountable, and establishing safeguards to prevent future harm to children's health.  https://childrenshealthdefense.org/about-us/childrens-health-defense-mission/ (last visited Oct. 23, 2024)*,* available at https://perma.cc/889N-UWQC.  This lawsuit implicates CHD's concerns

by ensuring that the County could lawfully enforce health and safety matters to deny Verizon's application. Given that the germaneness requirement is not stringent, the Court concludes that CHD has proffered sufficient justification to establish this prong of associational standing. As the other two prongs are not in dispute, the Court concludes that CHD has associational standing to seek permissive intervention.[6]

### B.    Permissive Intervention

Having found that CHD has associational standing to seek intervention, the next inquiry is whether permissive intervention is appropriate. As noted above, Federal Rule of Civil Procedure 24(b) governs the Court's analysis of CHD's request for permissive intervention. This rule allows for intervention on "timely motion," where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Moreover, the Court considers "whether the proposed intervenors will add anything to the litigation and whether

---

[6] Verizon argues that courts have "repeatedly found that CHD lacks Article III Associational Standing." Pl.'s Mem. at 11. Verizon's cited cases, however, are inapposite. In *Children's Health Defense v. FDA*, No. 23-50167, 2024 WL 244938, at *5 (5th Cir. Jan. 23, 2023), and *Children's Health Defense v. FDA*, 650 F. Supp. 3d 547, 555-56 (W.D. Tex. 2023), the courts found that associational standing was lacking because CHD's individual members had failed to show that they independently possessed Article III standing under the injury-in-fact prong—a requirement that is not at issue here. Moreover, this Court has already permitted the intervention of the Belmar residents, some of whom are CHD members, which satisfies this contested prong of associational standing. *See Children's Health Defense v. Fed. Commc'ns Comm'n*, 25 F.4th 1045, 1049 (D.C. Cir. 2022) (finding that where members of CHD had Article III standing, the first prong of the associational standing test was satisfied).

In the third case, *Children's Health Defense v. FDA*, No. 21-6203, 2022 WL 2704554, at *3 (6th Cir. July 12, 2022), the interests at stake involved the protection of military service members' rights to refuse or consent to COVID vaccines. The court found that "CHD's purpose [was] detached from the interests at stake in the complaint" because "CHD's stated mission is to end 'childhood health epidemics by working aggressively to eliminate harmful exposures, hold those responsible accountable, and establish safeguards so this never happens again.'" *Id.* (internal quotation omitted). By contrast here, the interests at stake in the litigation are the construction of small wireless facilities in Belmar, New Jersey, which fully overlaps with CHD's stated mission of "ending childhood health epidemics" by "eliminating environment exposures" from sources that include wireless technology.

the proposed intervenors' interests are already adequately represented in the litigation." *Worthington v. Bayer Healthcare LLC*, No. 11-2793, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)). Rule 24(b) further provides that a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Ultimately, the decision of whether to grant or deny permissive intervention lies within the Court's discretion." *Bacon v. Avis Budget Grp., Inc.*, No. 16-5939, 2022 WL 2158964, at *2 (D.N.J. June 15, 2022) (citing *Brody v. Spang*, 957 F.2d 1108, 1124 (3d Cir. 1992)).

In arguing that permissive intervention is not warranted, Verizon raises several arguments. First, it asserts that CHD's second intervention motion is untimely and would unduly delay and prejudice the parties' rights. Second, it contends that CHD's claim that radiofrequency emissions pose health risks is preempted by federal law. Third, Verizon argues that CHD fails to allege that it shares a common question of law or fact with the main action. Fourth, Verizon claims that CHD's interests are adequately represented. Finally, it asserts that CHD's intervention will not add any meaningful value to the litigation. These arguments are addressed below.

  1. <u>Timeliness</u>

Permissive intervention under Rule 24(b)(2)(B) requires that intervention be sought by way of a "timely motion." "The timeliness of a motion to intervene is determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Mountain Top Condo Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (cleaned up). "The mere passage of time . . . does not render an application untimely." *Id.* (citations omitted). Rather, whether an intervention motion is timely, requires consideration of three factors: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties;

and (3) the reason for the delay. *Id.* (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). Under the first factor, "the critical inquiry is: what proceedings of substance on the merits have occurred?" *Id.* Under the second factor, "prejudice can result when a party seeks to intervene at a late point in litigation." *U.S. v. Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014). Finally, under the third factor, a proposed intervenor's failure to explain why it did not file its intervention motion sooner weighs against timeliness. *See In re Gen. Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, No. MDL 961, 1996 WL 683785, at *5 (E.D. Pa. Nov. 25, 1996), *aff'd*, 134 F.3d 133 (3d Cir. 1998).

Verizon contends that this case has been pending since September 2023, and that CHD was denied intervention on March 7, 2024, but it waited until April 18, 2024, to file its second motion for intervention. Pl.'s Opp'n at 2. Verizon argues that the parties are proceeding with discovery in accordance with the Court's scheduling order and that Verizon, the County, and Intervenors have begun settlement discussions. As such, Verizon posits that "CHD's discovery will be duplicative and place additional, unnecessary burdens on the Court's valuable resources and the expeditious resolution of this case." *Id.* at 22.

The Court disagrees. CHD first moved to intervene in this action only three weeks after Verizon's Complaint was filed and before the County answered the original Complaint. In addition, the Court already found CHD's first motion to be timely. *See* Mem. Order at 9. CHD's renewed motion was filed approximately six weeks after the Court denied its first request for intervention. Verizon does not argue—nor could it—that the six-week delay in CHD bringing its renewed motion is unreasonable. Given the objective reasonableness of this short delay, that discovery is still ongoing, and that no proceedings on the merits have occurred, the Court finds that CHD's motion is timely.

13

      2.      <u>Preemption</u>

Verizon next contends that federal law preempts any claims that CHD seeks to raise in this litigation. Pl.'s Opp'n at 12-16. Section 332(c)(7) of the TCA "preserves the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers, but imposes specific limitations on that authority." *T-Mobile S., LLC v. City of Roswell, Ga.*, 574 U.S. 293, 300 (2014) (cleaned up). "Among other substantive restrictions in the TCA, '[n]o . . . local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of [RF] emissions to the extent that such facilities comply with [FCC] regulations concerning such emissions.'" *Extenet Sys., Inc. v. Twp. of N. Bergen, N.J.*, No. 20-15098, 2022 WL 1591398, at *3 (D.N.J. May 19, 2022) (quoting 47 U.S.C. § 332(c)(7)(B)(iv)). "'Environmental effects' include the effect of RF emissions on human health." *Id.* (citations omitted). "Thus, so long as a proposed facility would comply with FCC regulations, a town may not deny an application based on a perceived threat to human safety arising from RF emissions." *Id.*

Against this backdrop, Verizon contends that it has produced expert reports that each of the SWFs will be fully compliant with the FCC Radiofrequency Radiation Exposure Limits. Gaudioso Decl., Ex. B (expert report opining that the SWFs will be fully compliant with FCC limits). Since the SWFs will allegedly comply with FCC radiofrequency limits, Verizon reasons that CHD's claims of the alleged negative effects of RF emissions on humans and the environment are preempted.

Verizon's argument is premature. The implied preemption in § 332(c)(7)(B)(4) presumes that the FCC will, in fact, conclude that the proposed SWFs will comply with FCC Radiofrequency

14

Radiation Exposure Limits—a decision not appropriately made at this time. To the extent that the FCC ultimately concludes that the SWF's do not comply with the Exposure Limits, the TCA does not necessarily preempt the authority of an independent organization, such as CHD, to challenge the environmental impacts from the construction of the SWFs.[7]

### 3. The Remaining Factors for Permissive Intervention

In its remaining three arguments, Verizon contends that CHD fails to assert a common question of law or fact with the main action, CHD's interests are already represented in the litigation, and CHD's intervention will not add any meaningful value to the litigation.

Assuming for purposes of this motion that CHD shares common questions of fact or law with the main action, the Court finds that CHD's request for permissive intervention is unwarranted because its interests are adequately represented in this litigation. "Where the interests of the proposed intervenors are already represented in [an] action, courts typically deny such applications as a discretionary matter[.]" *Bacon*, 2022 WL 2158964, at *2 (denying motion for permissive intervention because the assumed interests of the proposed intervenors were adequately represented); *see also Hoots*, 672 F.2d at 1136 (holding that where proposed intervenor's interests matched those of an existing party and that party's representation is adequate, the court is within its discretion to determine that the proposed intervenor's contributions to the proceedings would be superfluous); *Am. Neighborhood Mortg. Acceptance Co., LLC v. CrossCountry Mortg., Inc.*, No. 20-874, 2022 WL 16922179, at *4 (D.N.J. Nov. 10, 2022) (assuming that proposed intervenors shared a claim or defense with existing parties, the court denied permissive intervention because the proposed intervenors' interests were already represented by their employer, which was a party).

---

[7] Because preemption is a substantive question of law not at issue here, the Court does not decide whether any claims are preempted.

Indeed, "[t]he Third Circuit has explained that if the interests of the proposed intervenor are already represented in the litigation, courts typically deny such applications to intervene." *Am. Neighborhood Mortg. Acceptance*, 2022 WL 16922179, at *4 (citing *Hoots*, 672 F.2d at 1136); *Emqore Envesecure Priv. Cap. Tr. v. Singh*, No. 20-7324, 2022 WL 1115279, at *7 (D.N.J. Apr. 14, 2022) (same).

CHD contends that the Resident Intervenors cannot adequately represent its interests. CHD acknowledges that while it "shares the existing [R]esident Intervenors['] concerns about the harm to their children, the environment, and the aesthetic, visual impact the proposed wireless facilities will have on their property values and the historic appeal of their community that draws tourists and other visitors to the Jersey Shore," CHD has a unique interest in ensuring that Verizon does not succeed in its argument that the TCA and FCC rules preempt federal and state environmental laws. CHD's Reply at 9. CHD further claims that the resolution of the preemption issue and the scope of federal, state, and local regulatory authority "will result in a precedent-setting decision that will impact CHD's advocacy and litigation efforts to protect its members and hold corporate and governmental actors accountable for the environmental harms they cause in Monmouth County, in New Jersey, and beyond." *Id.*

Despite CHD's arguments, the Court finds that the Resident Intervenors adequately represent CHD's interests for several reasons. First, the Resident Intervenors, who are actively involved in this case, are individuals who live and own property in the immediate vicinity of the proposed SWFs with a significant interest in the environmental impact of the proposed SWFs. Moreover, despite Fed. R. Civ. P's 24(c)'s requirement that an intervenor applicant provide a proposed pleading with its motion that "sets out the claim or defense for which intervention is sought," CHD has chosen to rely strictly on the Resident Intervenors' Answer to Verizon's first

16

Amended and Supplemental Complaint.[8] *See* ECF No. 77 (Resident Intervenors' Answer) at 2 n.1 ("[CHD] submitted a renewed Motion to Intervene on April 18, 2024[.] . . . If the motion is granted CHD will adopt these Answers and Counterclaims."). Such exclusive reliance on this pleading suggests that the Resident Intervenors' interests are fully aligned with CHD's. *See Bricklayers & Allied Craftworkers Admin. Dist. Council of N.J. & Its Loc. Union Nos. 2, 4 & 5 v. GMAC Constr., LLC*, No. 11-5136, 2012 WL 13033108, at *2 (D.N.J. Jan. 30, 2012) (denying permissive joinder because the "movant does not allege that [the defendant] will not represent its interests in the matter adequately, and in fact seeks to rely exclusively on the papers filed by [the defendant] in the matter"). In addition, CHD notes that "since many of CHD's discovery requests overlap with the County's discovery requests, CHD's requests will be limited to the questions of law and the defenses uniquely raised by [the Resident] Intervenors." CHD's Mem. at 16. And in its reply brief, CHD represents that "[i]f it is permitted to intervene, CHD will join in [the Resident Intervenors'] arguments but may also advance others"; yet, CHD does not include a proposed pleading with its moving papers advancing any other arguments. CHD's Reply at 7. Finally, the Court notes that counsel who represents the Resident Intervenors also represents CHD. That fact typically militates against intervention. *See, e.g., Pa. Gen. Energy Co. v. Grant Twp.*, 658 F. App'x 37, 41 (3d Cir. 2016) (noting that any prejudice to proposed intervenors "'approaches the vanishing point when the remaining parties are represented by the same counsel'" (quoting *Marvel*

---

[8] CHD's failure to provide a proposed pleading as required under Fed. R. Civ. P. 24(c) is itself a basis for denying permissive intervention. *Transource Pa., LLC v. Dutrieuille*, No. 21-2567, 2022 WL 2235466, at *3 (3d Cir. 2022) (finding it within the court's discretion to deny intervention under Rule 24(c) because the motion was not accompanied by a pleading). Courts in the Third Circuit, however, "have not required strict compliance with Rule 24(c). Motions to intervene have been granted . . . despite a movant's failure to adhere precisely to the requirements of Rule 24(c), where the purpose of intervening was sufficiently clear." *Conforti v. Hanlon*, No. 20-8267, 2023 WL 2744020, at *3 (D.N.J. Mar. 31, 2023). Because CHD's purpose for intervening is clear here, the Court excuses its failure to submit a proposed pleading.

17

*Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013)).  For these reasons, the Court finds that the Resident Intervenors adequately represent CHD's interests in this litigation.

## CONCLUSION

Because its interests are already represented in this litigation, CHD's appearance as an intervenor would not sufficiently meaningfully add to the litigation.  Although CHD may believe that its advocacy would be more robust than the County Defendants, its concerns can be assuaged because the Resident Intervenors are CHD members and they share common counsel.  Exercising its sound discretion, the Court finds that permissive intervention is not warranted in this case.  An appropriate order follows.

s/Elizabeth A. Pascal  
ELIZABETH A. PASCAL  
United States Magistrate Judge

cc:   Edward S. Kiel, U.S.D.J.